No. [23-35466]

_____

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

_____

THE ESTATE OF BISHAR ALI HASSAN; AHMED HASSAN;
BILAY ADEN IDIRIS,

*Plaintiffs-Appellant*

V.

MUNICIPALITY AND CITY OF ANCHORAGE; MATTHEW
HALL; NATHAN LEWIS; BRETT EGGIMAN; DOES 1-20,
inclusive,

*Defendants-Appellee*

On Appeal from the United States District Court
for the District of Alaska
No. 3:21-CV-00076-SLG
Hon. Sharon L. Gleason

_____

**APPELLANT'S OPENING BRIEF**

_____

Rex Lamont Butler
Rex Lamont Butler and Associates
745 W.4TH Avenue, Suite 300,
Anchorage, AK 99501
(907)272-1497
rexbutlercalendar@gmail.com
*Attorneys for Appellant*
Estate of Bishar Ali Hassan, et al.

# TABLE OF CONTENTS

Page

I.      INTRODUCTION……………………………………………9-10

II.     STATEMENT OF JURISDICTION……………………… ………11

III.    ISSUES PRESENTED ………………………………………...12-13

IV.     STATEMENT OF FACT…………………………………………13-16

V.      STATEMENT OF CASE ………………………………………16-18

VI.     SUMMARY OF ARGUMENT…………………………………...18-19

VII.    STANDARD OF REVIEW………………………………………..20

VIII.   ARGUMENT ……………………………………………………20-37


1.  The District Court erred in finding that Bishar Hassan was not

    illegally seized before he was shot by the police……………………...20-24

2.  The District Court erred in concluding that Bishar Hassan did

    not submit to a show of authority……………………………………….24-27

3.  The District Court erred in finding that the police did not

    violate Ahmed Hassan's fourth amendment rights…………………...28-29

4.  The District Court erred by accepting defendants'

    version of facts as true…………………………………………………...30-33

5.  The District Court erred in finding that the defendants are

    entitled to summary judgement……………………….......................33-36

6.  The District Court's ruling on the Monell issue was based

on a mistaken conclusion to the effect that plaintiffs were

not deprived of a constitutional right and that no reasonable

jury could find that a constitutional violation occurred…………………..37

   IX.     CONCLUSION………………………………………………………37

STATEMENT OF COMPLIANCE …………………………………………....38

STATEMENT OF RELATED CASES …………………………………………39

# TABLE OF AUTHORITIES

ActUp!/Portland v. Bagley

    988 F.2d 868 (9th Cir. 1992)…………………………………………33,35


A.K.H. v. City of Tustin

    837 F.3d 1005 (9th Cir. 2016)……………………………………………30


Arizona v. Johnson

    555 U.S. 323,129 S.Ct.781, 172 L.Ed. 2D 694 (2009) …………………22


Brendlin v. California

    511 U.S.249 (2007) ……………………………………………………..24,26


California v. Hodari D.,

    499 U.S. 621(1991)………………………………….................21,26,27


Campbell v. Cheatham Cnty. Sheriff's Dep't

    47 F.4th 468 (6th Cir. 2022) …………………………………24,25,26,27


CarePartner LLC v. Lashway

    545 F.3d 867 (9th Cir. 2008)……………………………………………..20


Darring v. Kincheloe

    783 F.2d 874 (9th Cir. 1986) …………...................................20


Delaware v. Prouse

    440 U.S. 648 (1979)……………………………………………………..24

Deorle v. Rutherford

    272 F.3d 1272 (9th Cir. 2001)………………………………………36

Easyriders Freedom F.I.G.H.T. v. Hannigan

    92 F.3d 1486 (9th Cir. 1996)………………………………………22

Florida v. J.L.

    529 U.S. 266 (2000) …………………………………..…………………23

Harris v. Roderick

    126 F.3d 1189 (9th Cir. 1997)………………………………………30

Hope v. Pelzer

    536 U.S. 730 (2002)…………………………………………………...35

Kansas v. Glover

    140 S.CT. 1183, 206 L.Ed. 2d 412 (2020)……………………………22,36

Maxwell v. County of San Diego

    708 F.3d 1075 (9th Cir. 2013) …………………………………...28,29

Morales v. Fry

    873 F.3d 817 (9th Cir. 2017)………………………………………33,34

Plumhoff v. Rickard

    134 S. Ct. 2012 (2014) …………………………………………….…..33

Sandoval v. Las Vegas Metro. Police Dep't

    756 F.3d 1154 (9th Cir. 2014) …………………………………………31

Sialoi v. City of San Diego

    823 F.3d 1223 (9th Cir. 2016)…………………………………….......21


Tennessee v. Garner

    471 U.S. 1 (1985)………………………………………………………...21

Terry v. Ohio

    392 U.S. 1 (1968)………….........................................................................20

Tortu v. Las Vegas Metropolitan Police Department

    556 F.3d 1075(9th Cir. 2009)………………………………………………33

United States v. Beauchamp

    659 F.3d 560 (6th Cir. 2011) ………………………………………25,26,27

United States v. Brodie

    742 F.3d 1058 DC Circuit Court of Appeals (2014)…………………25,27

United States v. Cortez

    449 U.S. 411(1981)………………………………………..………………..22

United States v. Green

    783 F.2d 1364 (9th Cir. 1986)……………………………………………..34

United States v. Jimenez-Medina

    173 F.3d 752 (9th Cir. 1999)………………………………………….....22

United States v. Lowe

    791 F.3d 424 (3d Cir. 2015)………………………………………..25,26,27

United States v. Maybusher

 735 F.2d 366 (9th Cir. 1984)………………………………………..33

United States v. Mendenhall

 446 U.S. 544 (1980)………………………………………………..20,21

United States v. Michael R.

 90 F.3d 340 (9th Cir. 1996)……………………………...………21

United States v. Morgan

 936 F.3d 1561 (10th Cir. 1991)………………………………25,27

United States v. Greene

 783 F.2d 1364 (9th Cir.) …………………………………………..34

United States v. Sharpe

 470 U.S. 675 (1985) ………………………………..………………23

United States v. Swindle,

 407 F.3d 562 (2nd Cir. 2005)………………………………………...23

United States v. Sokolow

 490 U.S. 1 (1989) …………………………………….…22,36

United States v. Washington

 490 F.3d 765 (9th Cir. 2007)……………………………………..21

Zion v. County of Orange

 874 F.3d 1072 (9th Cir. 2017)……………………………………...32

**Federal Statutes**

28 U.S.C §1983……………………………………………………………..11,17,33

28 U.S.C §1331……………………………………………………………………11

**Other Authorities**

Fourth Amendment……………………………………………………………*passim*

Federal Rules of Evidence 1001 & 1003…………………………………………32

# I.    INTRODUCTION

On April 1, 2019, Bishar Hassan was shot and killed by Anchorage Police Department (APD) Officers as he walked across an open park shortly after disembarking off a city bus. APD dispatch received calls of a man walking around and carrying a gun openly and not threatening or pointing the gun at anyone. Because Alaska is an open carry state, Bishar Hassan was exercising his constitutional right to carry a gun openly.  Bishar Hassan was stopped and seized by officers in three APD vehicles with activated emergency response lights flashing and siren sounding. Two of the police cars mounted the pavement and aggressively drove behind Bishar Hassan who was walking with nothing in his hands. Bishar Hassan stopped, turned around and walked back towards the APD officers who were now standing outside their cars. Bishar Hassan reached into his pocket or waist band pulled out his "toy" gun and said to the police officers that the gun was not real. The APD Officers shot Bishar Hassan multiple times and continued shooting him even after the toy gun was out of his hand. He succumbed to his wounds and died.

Ahmed Hassan watched APD officers' attempts to give his brother Bishar Hassan medical help. The APD Officers learned of Ahmed Hassan's presence and promptly seized him; placed him in a police car and transported him to the police

station. He told them that he did not want to go to the station but wanted to go to the hospital with his brother. This request fell on deaf ears. At the police station, Ahmed Hassan was held for hours in a room with the door shut. He was not allowed to leave even when he said that he wanted to go see his brother. Ahmed Hassan was denied updates on his brother's condition and continued to be held at the police station against his will.

Viewing all relevant facts in a light most favorable to Plaintiffs-Appellant, Bishar Hassan, Defendants-Appellee violated Bishar Hassan's clearly established, Fourth Amendment right to be free from unreasonable searches and seizures when APD seized him without reasonable suspicion before shooting and killing him.

Viewing all relevant facts in a light most favorable to Ahmed Hassan, Defendants-Appellees violated Mr. Ahmed Hassan's clearly established, Fourth Amendment right to be free from unlawful seizure when they detained him for several hours. He was detained only because he likely witnessed the shooting. Mr. Ahmed Hassan made repeated statements and evinced obvious signs indicating he was being detained against his will.

For these reasons and those that follow, none of Defendants-Appellees are entitled to qualified immunity as a matter of law.

## II.    STATEMENT OF JURISDICTION

## A. DISTRICT COURT JURISDICTION

The District Court had federal question jurisdiction in this case because Plaintiffs/Appellants, Estate of Bishar Hassan, Ahmed Hassan and Bilay Aden Idiris (mom) (collectively "Plaintiffs") alleged a cause of action based on 42 U.S.C.§1983 (Section 1983). "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.§1331.

## B. APPELLATE JURISDICTION

The Federal District Court entered a final judgment in favor of Defendants/Appellees' motion for summary judgment on May 9th, 2023. [ER-17]. Plaintiffs filed a motion for reconsideration (motion to alter judgment) on May 15th, 2023, [ER-18-22] and the court denied the motion on May 19th, 2023[ER-11-16]. Plaintiffs filed a second motion to alter judgment on May 30th, 2023, [ER-5-10] and again, the court denied the motion to alter judgment on June 15th, 2023[ER-4]. On July 11th, 2023, plaintiffs filed notice of appeal with the District Court. [ER-98]. This court has appellate jurisdiction pursuant to 28 U.S.C.§1291: "The courts of appeals …shall have jurisdiction of appeals from all final decisions of the district court of the United States…"

### III.   ISSUES PRESENTED

1. Whether the District Court erred in concluding that Bishar Hassan was not seized until he was shot even though he was approached by police officers in three police cars with flashing emergency police lights and activated sirens driving directly at him causing him to stop, turn around, walks towards the police officers and talk to them.

2. Whether the District Court erred in concluding that Bishar Hassan did not submit to the police officers show of authority when three police cars pulled up behind him with flashing emergency police lights and siren that caused him to stop, turn around, walk towards the officers and talk to them.

3. Whether the District Court erred in finding that the defendants did not violate Ahmed Hassan's fourth amendment right to be free from unreasonable searches and seizures even though they forced him to accompany them to the police station where they detained and interrogated him for hours.

4. Whether the District Court erred in accepting the defendants' version of facts as true even though they were the moving party, and their facts differ from plaintiffs' facts.

5. Whether the District Court erred in finding that the defendants are entitled to qualified immunity.

6. Whether the District Court erred in concluding that plaintiffs could not establish a claim under Monell even though the court's conclusion is based on an incorrect analysis that plaintiffs' constitutional rights were not violated.

## IV.   STATEMENT OF FACTS

On April 1, 2019, in Anchorage, Alaska, at least six people called to report that there was a man with a gun. Three (3) of the callers reported that the man was waving the gun. The callers also said that: (i) the man was pointing the gun down and the callers did not see anyone around the man. (ii) the man did not seem to be searching for anybody (iii) the man was just walking normally down the street with a gun in his hand fiddling with it, not pointing it at anyone; (iv) the man was not pointing it at anyone. and a man on the sidewalk is waving a gun around. He looks angry and not all there.

Bishar Hassan was reported to have left the Walmart area in midtown Anchorage, and then spotted at a bus stop by a gas station where he hopped onto a city bus heading towards downtown Anchorage. [ER-88-97]. Officers drove by the Walmart area and the bus station area and did not see any commotion. They learned that Bishar Hassan had taken a city bus headed towards downtown. [ER-26-35].  The officers followed the city bus route towards downtown Anchorage. Officer Hall saw the bus stop and a man matching the description of Bishar Hassan

disembark from the bus and walk in the northerly direction. [ER-88-97]. The man suspected to be Bishar Hassan was by himself and did not have anything in his hands. (Docket 34-2 B1, B2 & B3).

**Officer Hall decided he was going to stop and detain Bishar Hassan from the moment he heard there was a gun.** When interviewed by detectives after he shot Bishar Hassan, Officer Hall said (based on other calls involving someone waving a gun or some sort of gun involvement) "we contact suspect, **detain him**, secure the gun, uh, and **then we investigate what possible crime we have**. Which is how I felt this call was -was going to go. We were gonna go up, we were gonna talk to the guy, we were gonna detain him, we were gonna secure the weapon, um, and then we were gonna start talkin' to witnesses and possible victims of whatever crimes might be, um that coulda led to either, an arrest, maybe not an arrest, maybe him going to the hospital, um a -bunch of different ways. It is not specifically how I thought this -this call was going to come…." [ER-85-87].

**Officer Matthew Hall arrived on scene and actively seeks out a confrontation, on his own without waiting for his coming up with a plan from central command even though it was evident that Bishar Hassan was not displaying weapon and was by himself.** [Docket 34-2 B1, B2 & B3)].

Officer Matthew Hall, in the lead police car, drove his car over the pavement, past the pedestrian path and on the grass and kept driving towards

Bishar Hassan. [Docket 34-2 B1, B2 & B3]. Officer Hall had activated police flashing lights and activated siren as he drove directly behind Bishar Hassan who was walking with nothing in his hands. Two police cars followed behind Officer Hall with activated his sirens and flashing police lights. [Docket 34-2 B1, B2 & B3]. One of the cars mounted the pavement and drove on the grass just like Officer Hall while the other pulled over the curb of the road. [Docket 34-2 B1, B2 & B3].

Bishar Hassan submitted the show of authority that was in full force from the police in three vehicles with activated sirens and flashing police lights. [Docket 34-2 B1, B2 & B3]. He stopped, turned around and walked towards the police officers. When he got closer to the police officers, he pulled out his gun and while showing it to them told them it was not real. [Docket 34-2 B1, B2, B3][1].

When interviewed by detectives, Officer Hall said (based on other calls involving someone waving a gun or some sort of gun involvement) "we contact suspect, detain him, secure the gun, uh, and then we investigate what possible crime we have. Which is how I felt this call was -was going to go. We were gonna go up, we were gonna talk to the guy, we were gonna detain him, we were gonna secure the weapon, um, and then we were gonna start talkin' to witnesses and possible victims of whatever crimes might be, um that coulda led to either, an

---

[1] Exhibit B1 & B2,dashcamera video from Officers Eggiman & Hall starting at 0:01:00 minutes, Bishar Hassan says that the gun is not real.

arrest, maybe not an arrest, maybe him going to the hospital, um a -bunch of different ways. It is not specifically how I thought this -this call was going to come….” [ER-85-87]

Ahmed Hassan was at the roadside, at the location, where police shot his brother Bishar Hassan. He called 911 shortly after Bishar Hassan was shot and while he was talking to the 911 operator, he was interrupted by a police officer who told him that by law, he was required to go with the police to the station.[ER-68-84] Ahmed Hassan informed the police that he wanted to go with his brother to the hospital, but he was informed by law enforcement that he was required to go to the police station. [ER-68-84] Ahmed Hassan was pat searched then transported to the police station where he was held in an interview room for several hours. [ER-57-67]. He was seized, held against his will and kept in the dark about his brother's condition. [ER-57-67].

## V.    STATEMENT OF THE CASE

Police officers responded to calls of a man seen with a gun in his hand while walking out in public. Without evidence of a crime, Alaska being an open carry state, three police officers seized Bishar Hassan. They drove police cars with activated flashing police lights and sirens towards Bishar Hassan who was walking away in the opposite direction but stopped, turned around and walked towards the

officers upon apparently realizing that he was being ordered to stop by the officers. [Docket 34-2 B1, B2 & B3)]. Bishar Hassan informed the officers what he had was not a real gun but a toy while attempting to show the police officers the toy gun [Docket 34-2 B1, B2 & B3]. However, as Bishar Hassan was attempting to show the police officers the toy gun, the officers shot at him more than a dozen times causing his death [Docket 34-2 B1, B2 & B3].

Ahmed Hassan, Bishar Hassan's older brother was present at the scene of the shooting. He was seized by police and transported to the Anchorage police station. He was held and interrogated for hours because he was a witness even though he was there against his will. Ahmed Hassan was held at the station even though he said he wanted to go be with his brother. The estate of Bishar Hassan, Ahmed Hassan and their mother, Bilay Aden Idiris sued Officers Hall, Lewis, Eggiman, the Municipality of Anchorage and DOES 1-20, under 42 U.S.C. section 1983, alleging constitutional violations under the Fourth and Fourteenth Amendments of the United States Constitution. The Defendants moved for summary judgment based on qualified immunity. The District Court granted the defendants' motion for summary judgment [ER-23-56].

However, the court was wrong to grant defendants summary judgment because the police lacked reasonable suspicion to seize Bishar Hassan or probable cause to detain Ahmed Hassan. Also, the police were on notice that their conduct

was illegal as established by 4th amendment case law. Further, summary judgment was not warranted because there is a material factual dispute as to whether the police officers acted reasonably under the circumstances.

Further, the District Court incorrectly ruled that plaintiffs could not establish liability under <u>Monell</u> because a reasonable jury could not find that there was a discovery violation and as such, plaintiffs cannot establish the requisite constitutional violation necessary for municipal liability. [ER-23-56].

## VI.    SUMMARY ARGUMENT

1. The District Court erred in concluding that Bishar Hassan was not seized before he was shot because the court ignored the fact that he submitted to a show of authority. When he was approached by three police cars with flashing lights and activated sirens, he stopped, turned around, and walk towards the police officers and explained that he did not have a real gun, as opposed to fleeing or evading the police. The District Court failed to assess whether Bishar Hassan was seized based on the number of police officers who approached, how they approached him with flashing lights and activated sirens, and whether his actions before he was shot established that he submitted to the police officers show of authority.

2. The defendants (police officers) were not entitled to qualified immunity because established authority put them on notice that seizing Bishar Hassan without reasonable suspicion or probable cause, violated a clearly established constitutional right under the Fourth Amendment of the federal constitution of which a reasonable officer would have known. Fourth amendment case law on searches and seizures placed the others on notice.

3. It is also clear that, at the time the officers detained Ahmed Hassan, they were on notice that it would violate the Fourth Amendment to detain someone for hours solely because they were a witness to an officer involved shooting, especially when Ahmed Hassan he was being held against his will. As such the defendants are not entitled to qualified immunity as a matter of law.

4. The District Court should not have granted summary judgment because there are genuine disputes as to the facts as is evident from admissible discovery already entered in the record before the District Court.

5. The District Court should not have granted summary judgment because there is a genuine dispute as to whether Officer Hall used excessive force. Officer Hall stated that he knew he was "getting hits" on Bishar Hassan but continued shooting Bishar Hassan even though the gun had fallen out of Bishar Hassan's hand before they killed him.

## VII.   STANDARD OF REVIEW

An appellate court reviews the district court's grant of summary judgment de novo to determine whether there is any genuine issue of material fact and whether the substantive law was correctly applied. <u>Darring v. Kincheloe</u>, 783 F.2d 874, 876 (9th Cir. 1986). Regarding possible factual disputes, an appellate court assumes that the version of the material facts asserted by the non-moving party is correct. <u>CarePartner LLC v. Lashway</u>, 545 F.3d 867, 875-876 (9th Cir. 2008).

## VIII.   ARGUMENT

## 1.   THE DISTRICT COURT ERRED IN FINDING THAT BISHAR HASSAN WAS NOT ILLEGALLY SEIZED BEFORE BEING SHOT BY THE POLICE

An individual is seized when an officer "by means of physical force or show of authority, has in some way restrained [his] liberty." <u>Terry v. Ohio</u>, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). To determine if a seizure has occurred, we will look to "all of the circumstances surrounding the incident" and consider whether "a reasonable person would have believed that he was not free to leave." <u>United States v. Mendenhall</u>, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). "*Mendenhall* establishes that the test for existence of a "show

of authority" is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." <u>California v. Hodari D</u>., 499 U.S. 621, 628 (1991). "Examples of circumstances that might indicate a seizure" include "the threatening presence of several officers or the display of a weapon by an officer." <u>United States v. Mendenhall</u>, 446 U.S.544, 554 (1980). The Ninth Circuit has identified several factors to consider in determining if a person was seized, any one of which, if present, could constitute a seizure:

> (1) the number of officers; (2) whether weapons were displayed; (3) whether the encounter occurred in a public or non-public setting; (4) whether the officer's tone or manner was authoritative, so as to imply that compliance would be compelled; and (5) whether the officers informed the person of his right to terminate the encounter.

<u>United States v. Washington</u>, 490 F.3d 765, 771-72 (9th Cir. 2007). "Whenever an officer restrains the freedom of a person to walk away, he has seized that person". <u>Tennessee v. Garner</u>, 471 U.S. 1, 7, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985).

To detain an individual for investigation, a police officer must have "reasonable suspicion." <u>United States v. Michael R</u>., 90 F.3d 340, 346 (9th Cir. 1996). "An investigatory detention is unlawful unless supported by reasonable suspicion." <u>Sialoi v. City of San Diego</u>, 823 F.3d 1223, 1235 (9th Cir. 2016) . A reasonable suspicion "is 'a particularized and objective basis for suspecting the

particular person stopped of criminal activity'" <u>United States v. Jimenez-Medina</u>, 173 F.3d 752, 754 (9th Cir. 1999) (quoting <u>United States v. Cortez</u>, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981)); see also <u>Arizona v. Johnson</u>, 555 U.S. 323, 326, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009) (indicating that an investigatory stop is lawful "in an on-the-street encounter . . . when the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense"). In other words, a "reasonable suspicion" consists of "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." <u>Easyriders Freedom F.I.G.H.T. v. Hannigan</u>, 92 F.3d 1486, 1496 (9th Cir. 1996) (internal quotation marks omitted).

"Like all seizures, [t]he officer's action must be justified at its inception." <u>Kansas v. Glover</u>, 140 S. Ct. 1183, 1185, 206 L. Ed. 2d 412 (2020) . An officer's action is justified at its inception if the officer had "reasonable suspicion" of criminal activity before initiating an investigatory stop. <u>United States v. Sokolow</u>, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). An investigatory or <i>Terry</i> stop is reasonable under the <u>Fourth Amendment</u> if "the officer's action was justified at its inception" and the investigation "was reasonably related in scope to the circumstances which justified the interference in the first place." <u>United</u>

States v. Sharpe, 470 U.S. 675, 682, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985) (quoting Terry, 392 U.S. at 20).

> A police officer should not be empowered to order someone to stop unless the officer reasonably suspects the person of being engaged in illegal activity. We find this position most faithful to *Terry*'s own prescription that, when stopping a suspect, a police "officer's action [be] justified at its inception." Terry, 392 U.S. at 20. The settled requirement is, of course, that reasonable suspicion must arise before a search or seizure is actually effected. As the Supreme Court has held, the "reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." Florida v. J.L., 529 U.S. 266, 271, 146 L. Ed. 2d 254, 120 S. Ct. 1375 (2000).

United States v. Swindle, 407 F.3d 562, 567-8 (2nd Cir. 2005).

Here the District Court's analysis **falls short** because it begins at the point when Bishar Hassan was shot as opposed to when he was first approached by police and **fails** to analyze whether the stop was justified from inception. Bishar Hassan was seized because he was approached by three police cars with emergency lights flashing and activated siren, with two of the police cars driving onto the pavement, pedestrian walkway and driving directly at him. [Docket 34-2 B1, B2 & B3]. He was then approached by four officers. That was a show of authority, and a reasonable person would not feel free to disregard the police and walk away. Bishar Hassan was seized. The seizure was without reasonable suspicion.

Neither the defendants nor the District Court can point to a particularized and objective basis for suspecting Bishar Hassan of criminal activity before he was

seized because in Alaska, it is not a crime to possess a gun in public. Alaska is an open carry state -meaning that citizens can openly possess a gun in public. There are no facts establishing that defendants had a factual basis indicating that Bishar Hassan had committed a crime or was about to commit a crime. This fact is backed by Officer Hall's statement to the effect that they planned on arresting Bishar Hassan then investigating what crime he may have committed. [ER-85-87]. Officer Hall made the statement to the Anchorage Police Department detective investigating the shooting of Bishar Hassan.  [ER85-87]. As established by the record [ER-85-87], Officer Hall did not have reasonable suspicion to stop Bishar Hassan at the moment he seized him. As such, the seizure of Bishar Hassan was not justified from inception and was therefore unlawful.

## 2. THE DISTRICT COURT ERRED IN CONCLUDING THAT BISHAR HASSAN DID NOT SUBMIT TO A SHOW OF AUTHORITY.

"What may amount to submission depends on what a person was doing before the show of authority. Brendlin v. California,511 U.S.249, 262 (2007). It is the nature of the interaction, and not its length, that matters. Delaware v. Prouse, 440 U.S. 648, 655(1979). By remaining rather than leaving after the show of authority, there is a submission to a show of authority. Campbell v. Cheatham Cnty. Sheriff's Dep't, 47 F.4th 468,477 (6th Cir. 2022). "Not fleeing" in response

to a show of authority suggests an individual has submitted to authority. <u>United States v. Lowe</u>, 791 F.3d 424, 434 (3d Cir. 2015). The short duration of submission means only that the seizure was brief, not that no seizure occurred. <u>United States v. Brodie</u>, 742 F.3d 1058,1062 DC Circuit Court of Appeals (2014). Momentarily yielding to the Officer's apparent show of authority during the initial portion of the encounter was a seizure for purposes of the Fourth Amendment. <u>United States v. Morgan</u>, 936 F.3d 1561, 1561 (10th Cir. 1991). A suspect may be seized for a brief time despite later demonstrating freedom of movement. <u>Campbell</u>, at 478 citing *Torres v. Madrid*, 141 S.Ct. 989, 1002 (2021), quoting *Hodari D*., at 49 U.S. at 625.

In <u>United States v. Beauchamp</u>, 659 F.3d 560 (6th Cir. 2011), the court concluded that Beauchamp was seized when, in compliance with Officer Fain's instructions, he stopped, turned around, faced the uniformed officer and the marked patrol car, and began to walk toward the officer. <u>Beauchamp</u>, 568-569. In <u>Campbell</u>, the court concluded that the Campbells submitted to the show of authority when the police officer shot at the Campbells' front door even though one of the Campbells later came out to the front porch and yelled profanities and went out to his yard. The court rationalized that this limited range of movement is factually distinguishable from cases in which a suspect is fleeing by running or driving away from officers. <u>Campbell</u>, at 477. The court further stated that:

Moreover, Mark's subsequent actions on his porch and in his yard are of little use in determining whether the Campbells were seized at the time that Fox fired his weapon, because a seizure is "a single act, and not a continuous fact," and an individual may be seized for a brief time despite later demonstrating freedom of movement. _Torres_, 141 S. Ct. at 1002 (quoting _Hodari D._, 49 U.S. at 625).

Campbell, at 478. Elaborating on their reasoning, the court stated that:

The events immediately following the gunshots is of greater value in determining whether the Campbells were seized **because a seizure is a discrete moment, and not a continuous chain of events**.[2] We do not ignore what happened next. Rather, we emphasize that what occurred immediately is more informative than what occurred later in time. By remaining on their property rather than leaving after shots were fired at their door, the Campbells submitted to Fox's show of authority and were restricted in their movement.

Id.

Here, the District Court **failed** to analyze what Bishar Hassan was doing before the show of authority as in Brendlin, at 262 or whether Bishar Hassan was attempting to evade or flee from police as in Campbell, at 477, Lowe, at 434, and Beauchamp, 568-569. This was an error by the District Court. The analysis is crucial to determining whether Bishar Hassan submitted to the show of authority. Moreover, the video evidence makes the analysis simple. Bishar Hassan did not attempt to evade or flee the police. [Docket 34-2 B1, B2 & B3] Like Beauchamp, Bishar Hassan stopped, turned and walked towards the police and informed them the gun was not real and attempted to show it to them. A person not submitting to

---

[2] Bolded for emphasis only and not as part of the quote.

police authority would have likely ignored the police, continued walking in the opposite direction, fled or attempted to evade them. A person who had not submitted to police authority would not have told the police that the gun is not real or prove it was not real by showing it to them like Bishar Hassan did.

Like Beauchamp, Bishar Hassan was seized when, in response to the police's show of authority, he stopped, turned around, faced the uniformed officers and the marked patrol cars, walked toward the officers and explained that what he had was not a real gun and attempted to show it to them. [Docket 34-2 B1, B2 & B3]. Bishar Hassan did not flee or attempt to evade the officers in any way. [Docket 34-2 B1, B2 & B3]. It was the flashing police lights and activated siren that caused Bishar Hassan to stop, turn around and walk towards the police. Bishar Hassan submitted to the police's show of authority.

As stated in Prouse, at 655, it is the nature of the interaction and not length that matters. A short duration only means the seizure was brief, see Brodie, at 1062 and Morgan, at 1561. By remaining and not fleeing in response to the officers' show of authority, Bishar Hassan submitted to the officers' authority, see Campbell, at 477 and Lowe, at 434. Any later movement by Bishar Hassan does not change the fact that he was seized, see Campbell, at 478 citing citing *Torres v. Madrid*, 141 S.Ct. 989, 1002 (2021), quoting *Hodari D.*, at 49 U.S. at 625.

### 3. THE DISTRICT COURT ERRED IN FINDING THAT THE POLICE DID NOT VIOLATE AHMED HASSAN'S FOURTH AMENDMENT RIGHTS

Ahmed Hassan's fourth amendment right to be free from unlawful seizure was clearly established when Defendants detained him for hours and interrogated. This situation was further aggravated because Ahmed Hassan wanted to go to the hospital with his brother who was shot multiple times and was likely dying. Ahmed Hassan was deprived of those last remaining moments of his brother's life. Ahmed Hassan will never have closure.

Ahmed Hassan should not have been forced to go to the police station. He was detained because he was a witness to the shooting death of his brother at the hands of the police. He never consented to being held in the back of a police vehicle, transported to a police station, being detained for hours in a highly traumatized state, prevented from being with his brother at such a traumatic time. Has was obviously detained against his will even when he voiced his desire to go home, only to be detained longer and longer. This civil right violation is most egregious.

Maxwell v. County of San Diego, 708 F.3d 1075 (9th Cir. 2013), provided Defendants with more than enough notice that detaining Ahmed Hassan for hours-

long detention and interrogation, following his witnessing the shooting death of his brother was unreasonable under the Fourth Amendment.

In <u>Maxwell</u>, this Court found it an "obvious" violation of the Maxwell family's Fourth Amendment right to be free from unreasonable seizures when they "were seized for over five hours solely because they were witnesses to a crime." Id. at 1083-84 (emphasis added). The Court observed, "Although detention of witnesses for investigative purposes can be reasonable in certain circumstances, such detentions must be minimally intrusive." Id.

This Court also concluded in <u>Maxwell</u> that "the Sheriff's officers were on notice that they could not detain, separate, and interrogate the Maxwells for hours." <u>Maxwell</u>, 708 F.3d at 1084 (emphasis added).

Here, as in <u>Maxwell</u>, this is an "obvious" case, in which Defendants knew they were participating in a violation of Ahmed Hassan's Fourth Amendment rights, especially when the facts are viewed in a light most favorable to the plaintiffs, the nonmoving party.

In summary, viewing all relevant facts in a light most favorable plaintiffs, the Defendants obviously violated Ahmed Hassan's Fourth Amendment rights by detaining him against his will. These defendants are not entitled to qualified immunity as a matter of law.

## 4. THE DISTRICT COURT ERRED BY ACCEPTING DEFENDANTS' VERSION OF THE FACTS AS TRUE.

A court deciding a motion for summary judgment is required to consider all disputed facts in the light most favorable to the nonmoving party. A. K. H.v. City of Tustin, 837 F.3d, 1005, 1010; Harris v. Roderick, 126 F.3d 1189, 1192 (9th Cir. 1997).

The district court did not follow this rule. The court applied the version of material disputed facts most favorable to Defendants. The court's order granting defendants motion for summary judgement is founded on facts taken from conclusion drawn using evidence reproduced by the defendants' expert designed to present the defendants' preferred perspective. [ER-11-16]. Instead of relying on the best evidence, the unaltered videos, the court relied on still images developed from the video taken from the police dash cameras that were frozen and framed at the defendants' preferred perspective points and as such, do not depict what actually happened because the perspective frozen frames do not tell the whole story consistent with how events unfolded.

For example, plaintiffs are of the position that Bishar Hassan informed the police officers that what he had was not a real gun. [Docket 34-2 B1, B2 & B3]. There is no evidence that the defendants are of the same position and the District

30

Court ruling is inconsistent with the plaintiffs' position even though there is no evidence to the contrary.

In <u>Sandoval v. Las Vegas Metro. Police Dep't</u>, 756 F.3d 1154 (9th Cir. 2014), the Ninth Circuit overturned the district court's summary judgment rulings on excessive force and qualified immunity because the district court improperly weighed conflicting evidence with respect to disputed material facts. <u>Id</u>. at 1166. Specifically, the court drew conclusions based upon conflicting testimony, relying upon the officers' version of events rather than the non-moving party's version. Id. "[I]n weighing the evidence in favor of the officers, rather than the Sandovals, the district court unfairly tipped the reasonableness inquiry in the officers' favor," an error that mandated reversal. <u>Id</u>. at 1167.

As in <u>Sandoval</u>, here the district court unfairly tipped the scales by resting its ruling on Defendants' version of disputed facts. Specifically, the court relied on still photos developed from the video evidence in this case by the defendants' expert. The frozen stills from the video are incomplete in the incidents that they depict. This was legal error.

### A. **The District Court Must Accept The Facts Shown By Video Evidence**

The District Court's error in accepting Defendants' version of the "facts" is compounded by the fact that Defendants "facts" as presented in the photos

developed from frozen video frames are incomplete in the incidents that they depict. This error alone warrants reversal.

In <u>Zion v. County of Orange</u>, 874 F.3d 1072, 1076 (9th Cir. 2017), the court stated that;

> [W]e 'may not simply accept what may be a self-serving account by the police officer.' This is especially so where there is contrary [video] evidence. . . . This is a dispute of fact that must be resolved by a jury." (citation omitted).

<u>Zion,</u> at1076.

Here, the District Court accepted and relied on what is a self-serving account. The frozen video stills in the form of photos were developed and produced by the defendants' expert. An expert who did not appear before the District Court to have his credibility and testimony subject to the court's determination of credibility.

Also, the District Courts' use of the photos violates the best evidence rule. The Best Evidence Rule, with some exceptions, requires the use of an original writing, recording, or photograph in proving its material contents. A copy of a video recording, not photographic cuts, is a "duplicate" admissible "to the same extent as the original," <u>Fed. R. Evid. 1001</u> & <u>Fed. R. Evid. 1003</u>.

These two matters are issues of factual dispute. However, the District Court elected to accept the moving party's (the defendants) alleged facts as opposed to

accepting the nonmoving party's facts as true. This error warrants the reversal of summary judgment.

## 5. THE DISTRICT COURT ERRED IN FINDING THAT THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

A public official is not entitled to qualified immunity under section 1983 where a plaintiff can show that the official (1) violated a statutory or constitutional right, (2) that was "clearly established" at the time of the challenged conduct. Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014) (citation omitted). "Whether a constitutional right was violated . . . is a question of fact" for the jury, while "whether the right was clearly established . . . is a question of law" for the judge. Morales v. Fry, 873 F.3d 817, 824 (9th Cir. 2017) quoting *Tortu v. Las Vegas Metropolitan Police Department*, 556 F.3d 1075, 1085 (9th Cir. 2009).

If a genuine issue of fact exists preventing a determination of qualified immunity at summary judgment, the case must go to trial. ActUp!/Portland v. Bagley, 988 F.2d 868 , 873 (9th Cir. 1992).

> Where a Fourth Amendment violation is claimed, the factual issues that may preclude a determination of qualified immunity on summary judgment fall into two categories. First, a determination of reasonable suspicion or probable cause requires an inquiry as to the facts and circumstances within an officer's knowledge. *United States v. Maybusher,* 735 F.2d 366, 371 (9th Cir. 1984) (reasonable suspicion), *cert. denied,* 469 U.S. 1110, 83 L. Ed. 2d 783, 105 S. Ct.

790 (1985); _United States v. Greene,_ 783 F.2d 1364, 1367 (9th Cir.) (probable cause), _cert. denied,_ 476 U.S. 1185, 91 L. Ed. 2d 551, 106 S. Ct. 2923 (1986). These are matters of fact to be determined, where genuine disputes of a material nature exist, by the fact finder. Second, the determination of what conduct underlies the alleged violation - what the officer and claimant did or failed to do - is a determination of fact. We hold, however, that the determination whether those facts support an objective belief that probable cause or reasonable suspicion existed is ordinarily a question for the court. It is not in itself a factual issue that can preclude summary judgment.

Id.

Here, as demonstrated in argument 1 and 2 above, genuine issues of fact exist based on a claim of a fourth amendment violation. There is the unresolved question of whether the police violated Bishar Hassan's and Ahmed Hassan's fourth amendment right to be free from unreasonable searches and seizures. This is a question of fact for the jury to decide. The undisputed record established that Officer Hall said that his intent was to seize Bishar Hassan first then investigate what crime he had committed [ER85-87]. This fact establishes that Officer Hall lacked reasonable suspicion or probable cause to stop Bishar Hassan. As such, it establishes that there is an issue as to whether Bishar Hassan constitutional right to be free from unreasonable searches and seizures under the 4th amendment was violated. As stated in Morales, at 824 quoting _Tortu, at 1085_, this is a question for the jury. Also, months later after having time to reflect and think about the shooting, and after preparing for being deposed by the plaintiffs' attorney, during

the deposition Officer Hall alleged that he stopped Bishar Hassan because had reasonable suspicion to believe that Bishar Hassan had violated a Municipal code. Because this was a new development revealed after he was prepared in anticipation of being deposed and because an officer must have reasonable suspicion at inception of a seizure, this later development of reasonable suspicion presents a genuine dispute of fact. It calls for a fact finder to determine the facts and circumstances within Officer Hall's knowledge at the time he stopped Bishar Hassan. ActUp!/Portland, at 873. This issue created another unresolved factual issue that bars summary judgment. Further, there is factual dispute as to whether Bishar Hassan informed the Defendants that what he had was not a real gun [Docket 34-2 B1, B2 & B3]. This too has to be resolved by a fact finder. As such, this case must proceed to trial. It was an error for the court to grant summary judgment.

**The Defendants Violated A Clearly Established Right By Seizing Bishar Hassan Absent Reasonable Suspicion.**

Ninth Circuit law holds that a right can be "clearly established," even without a specific precedent that matches the facts of the case, where the conduct at issue is obviously violative of constitutional rights. Hope v. Pelzer, 536 U.S. 730, 741 (2002). "Otherwise, officers would escape responsibility for the most

egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct." <u>Deorle v. Rutherford</u>, 272 F.3d 1272, 1286 (9th Cir. 2001). As argued above, Defendants seized Bishar Hassan without reasonable suspicion that he had committed a crime. Officer Hall's statements during his interview with detectives establish that he did not have reasonable suspicion at the time he seized Bishar Hassan.  Stopping Bishar Hassan under the circumstances constituted an obvious violation of the Fourth Amendment. As the Supreme court as held, "Like all seizures, [t]he officer's action must be justified at its inception." <u>Kansas v. Glover</u>, 140 S. Ct. 1183, 1185, 206 L. Ed. 2d 412 (2020) . An officer's action is justified at its inception if the officer had "reasonable suspicion" of criminal activity before initiating an investigatory stop. <u>United States v. Sokolow</u>, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989).

The outer contours of the Fourth Amendment are some of the few things in our case law that are as clearly established as the principle that an officer may not seize a citizen for an investigative stop without first having reasonable suspicion. <u>Sokolow</u> and <u>Terry</u>, among other cases placed the defendants on notice that seizing a person without reasonable suspicion would be unconstitutional and a violation of the Fourth amendment.

**6. THE DISTRICT COURT'S RULING ON THE MONELL ISSUE IS BASED ON A MISTAKEN CONCLUSION THAT NO PLAINTIFF WAS DEPRIVED OF A CONSTITUTIONAL RIGHT AND NO REASONABLE JURY COULD FIND A CONSTITUTIONAL VIOLATION OCCURRED**

As argued above, the District Court erred when it concluded that Bishar Hassan did not submit to the police officers show of authority. That court's conclusion was without assessment or analysis on whether there was a seizure given that Bishar Hassan was approached by three police cars with flashing lights and activated siren. Because the ruling was made based on the District Court's incorrect conclusion, the ruling on the Monell issue should be reversed.

## IX.   CONCLUSION

For the foregoing reasons, the District Court's judgment and order denying that granted defendants summary judgment should be reversed in its entirety and the case remand for trial, for consideration of the Plaintiffs claims of the merits.

DATED: October 11th, 2023.

REX LAMONT BUTLER AND ASSOCIATES

/s/ Rex L. Butler
Rex Lamont Butler
Attorney for Appellant [Estate of Bishar Ali Hassan, Et'al]

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rules of Appellate Procedure, Rule 32(a)(7), the undersigned certifies that the accompanying brief:

(1) Has been prepared using 14-point Times New Roman typeface;

(2) Is double-spaced (except for heading and footnotes)

(3) Is proportionally space; and

(4) Contains 6,895 words, exclusive of the table of contents, table of authorities, certificates of counsel, and proof of service.

## <u>STATEMENT OF RELATED CASES</u>

To the knowledge of Appellant, no other cases in this Court are deemed related to this case pursuant to Circuit Rule 28-2.6.