_____
**No. 23-35466**

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**


THE ESTATE OF BISHAR ALI HASSAN, AHMED HASSAN,
and BILAY ADEN IDIRIS

Plaintiffs - Appellants,

v.

MUNICIPALITY AND CITY OF ANCHORAGE, MATTHEW HALL,
NATHAN LEWIS, BRETT EGGIMAN, DOES 1-20, inclusive

Defendants – Appellees

On Appeal from the U.S. District Court for Alaska
No. 3:21-cv-00076-SLG (Hon. Sharon L. Gleason)


**APPELLEE'S ANSWERING BRIEF**

<div style="margin-left:40%">

Attorneys for Appellees
Municipality and City of Anchorage,
Matthew Hall, Nathan Lewis and
Brett Eggiman

Pamela D. Weiss
Guess & Rudd P.C.
1029 W. 3rd Avenue, Suite 400
Anchorage, AK 99501
Phone: 907-793-2200
pweiss@guessrudd.com

</div>

# **TABLE OF CONTENTS**

Table of Authorities ................................................................... iv

I.     JURISDICTIONAL STATEMENT ................................................. 1

II.    STATEMENT OF ISSUES ........................................................... 1

III.   STATEMENT OF THE CASE ...................................................... 2

     A.     Relevant Undisputed Facts .................................................. 2

     B.     Procedural History ............................................................. 5

IV.   STANDARD OF REVIEW ........................................................... 6

V.     SUMMARY OF ARGUMENT ...................................................... 7

VI.   ARGUMENT ............................................................................... 9

     A.     The District Court Correctly Concluded
           Hassan Was Not Seized ...................................................... 9

         1.     The Court Correctly Concluded that
                Hassan Did Not Submit to A Show of Authority ..................... 10

         2.     The Officers Had Reasonable Suspicion to Stop Hassan ........ 13

     B.     Relying on the Undisputed Videos, the District
           Court Correctly Granted Summary Judgment .................................. 14

         1.     It was Permissible for the Court to Look at the
                Forensic Video Analysis to Help Interpret the Video;
                Doing So Did Not Create a Material Issue of Fact ................. 14

         2.     Plaintiffs' "Position" Does Not Create an
                Issue of Fact in the Absence of Admissible
                Evidence to Support the "Position" ......................................... 16

3.    Officer Hall's After-the-Fact Statements
      to Investigators Do Not Create an Issue of Fact ...................... 17

C.    Ahmed Did Not Make A 4th Amendment Claim and the
      Court Did Not Make Any Findings on Such Claim .......................... 18

D.    The Remaining Arguments on Appeal ............................................... 19

1.    Qualified Immunity Was Proper
      Upon Finding No Constitutional Violation ............................. 19

2.    Plaintiff Has Not Raised Any Reviewable Issue
      With Regard To Dismissal of the Monell Claim ..................... 21

VII.  CONCLUSION ............................................................................................ 21

CERTIFICATE OF COMPLIANCE ...................................................................... 23

STATEMENT OF RELATED CASES .................................................................. 24

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct. 1598, 1609, 26 L. Ed. 2d 142 (1970) ................................................................... 7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 256, 257, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986) .................................. 7

Blankenhorn v. City of Orange, 485 F.3d 463, 470, 484 (9th Cir. 2007) (citations omitted) ................................................................... 6,7

Brendlin v. California, 551 U.S. 249, 254, 127 S. Ct. 2400, 2405, 168 L. Ed. 2d 132 (2007) ................................................................ 10

Bryan v. MacPherson, 630 F.3d 805, 831 (9th Cir. 2010) ....................... 18

California v. Hodari D., 499 U.S. 621, 626, 111 S. Ct. 1547, 1551, 113 L. Ed. 2d 690 (1991) ................................................................ 10

Campbell v. Cheatham Cty. Sheriff's Dept., 47 F4th 468, 477, 478 (6th Cir. 2022) ........................................................................... 12

County of Los Angeles v. Mendez, 581 U.S. 420, 429, 137 S. Ct. 1539, 1547, 198 L. Ed. 2d 52 (2017) ...................................................... 14

Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) ........... 21

Frigard v. United States, 862 F.2d 201, 204 (9th Cir. 1988) .................. 19

Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041 (9th Cir. 1994) .... 19

Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989) ................................................................ 18

Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982) ................................................................ 19

Morales v. Fry, 873 F.3d 817, 823, 824 (9th Cir. 2017)............................................20

Navarette v. California, 572 U.S. 393, 396-397 (2014) ...........................................13

Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2014) ......................7

Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct, 808,
    172 L. Ed. 565 (2009)........................................................................................20

Sandoval v. Las Vegas Metro. Police Dep't, 756 F.3d 1154, 1166
    (9th Cir. 2014)..................................................................................................17

Saucier v. Katz, 533 U.S. 194, 201 (2001) ..............................................................19

U.S. v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, 750,
    151 L. Ed. 2d 740 (2002)...................................................................................18

U.S. v. Beauchamp, 659 F.3d 560, 567-68 (6th Cir. 2011).......................................13

U.S. v. Freeman, 735 F.3d 92, 95-97 (2d Cir. 2013)................................................12

U.S. v. Johnson, 212 F.3d 1313, 1316-17 (D.C. Cir. 2000) ....................................13

U.S. v. Lowe, 791 F.3d 424, 430-31, 433-434 (3rd Cir. 2015).................9,10,11,12

U.S. v. McClendon, 713 F.3d 1211, 1216-17 (9th Cir. 2013)..................................12

U.S. v. Smith, 633 F.3d 889, 892 (9th Cir. 2011)...........................................6,10,11

U.S. v. Vandergroen, 964 F.3d 876, 880-881 (9th Cir. 2020)..................................14

Zion v. County of Orange, 874 F.3d 1072, 1076 (9th Cir. 2017)......................15,16

STATUTES

28 U.S.C. § 1367.......................................................................................................1

v

**OTHER AUTHORITIES**

Anchorage Municipal Code 8.25.030A.1 ...............................................14

Fourth Amendment ...............................................................passim

## I.  Jurisdictional Statement

Plaintiffs' jurisdictional statement is incomplete.   In addition to federal question jurisdiction, the U.S. District Court also exercised supplemental jurisdiction over all state law claims asserted.  28 U.S.C § 1367.

## II.  Statement of Issues

1.  Whether the court correctly found that Bishar Hassan had not submitted to authority sufficient to constitute a seizure when he failed to comply with the officer's commands and threatened the officers with a gun.

2.  Whether the court's use of a demonstrative aide to assist with interpretation of undisputed video evidence is proper.

3.  Whether an appellant can create an issue of fact by its counsel taking a "position," without presenting any specific facts or evidence in support of that "position."

4.  Whether an after-the-fact statement can create an issue of fact under the objective analysis of a 4th Amendment.

5.  Whether the court reasonably declined to exercise supplemental jurisdiction over plaintiff's state law claims following dismissal of all federal claims.

1

6. Whether, after finding qualified immunity based on the absence of a constitutional violation, the court properly did not consider whether the law was clearly established.

## III. Statement of the Case

### A. Relevant Undisputed Facts.

At approximately 5:45 p.m. on April 1, 2019, Anchorage Police Department ("APD") dispatchers began receiving calls about a man with a gun near the Wal-Mart in midtown Anchorage. [SER-37]  The descriptions of his actions varied slightly but included that he was "pulling a handgun out of his jacket," "pointing it down," "waving [it] around," and "brandishing [it]." [SER-37]  After a few minutes, a caller observed the man tuck the gun into his "front right pants or front right jacket." [SER-38]  Shortly after that, the original caller reported the man had boarded a bus heading northbound on A Street. [SER-38]

Three APD officers – Officers Hall, Lewis and Eggiman – headed to the scene, eventually driving northbound onto A Street.  Officer Hall saw a man matching the description of the man reported by callers just north of where the bus had stopped. [ER-91]  Officer Hall drove up onto the sidewalk behind where the man was walking northbound. [Exh. 36, Exh. B-2]  Officer Lewis pulled up behind Officer Hall [Exh. 36, Exh. B-3] and Officer Eggiman parked on the side of the

road, next to the curb in line with Officer Hall. [SER-30] The man was later identified as Bishar Hassan ("Hassan").[1]

From the time that Officer Hall opened his door until the first shot was fired was only about four seconds. [Dkt. 34-2, Exh. B-3] The officers' In Car Video (ICV) captured the event, including all of Hassan's movements. [Dkt. 34-2, Exhs. B-1, B-2, B-3] However, because of the speed with which the event occurred, defendants retained a video expert to analyze and isolate the frames so that the sequence of events depicted in the video could be determined. [SER-6-27; *see* Dkt. 34-4, Exh. C-1]

As the officers began to pull up to the scene, Hassan was walking away from them. [Dkt. 34-2, Exh. B-2] But before Officer Hall stopped his vehicle, Hassan turned around and started walking towards him. [ER-92; Dkt. 34-3, Exh. B-2] As he exited his vehicle, Officer Hall can be heard saying to Hassan "Hey, stop right there man, stop right there." [Dkt. 34-3, Exh. B-2; SER-20] But Hassan did not stop. He kept walking towards the officers and, without stopping, began reaching for his waistband, where a caller reported he had tucked the gun. [Dkt. 34-2, Exh. B-2] It was only after Hassan's hand contacted his gun that Officer Hall moved his

---

[1] There are two individuals in this case with the last name Hassan. Appellees will use Hassan to refer to decedent Bishar Hassan and Ahmed to refer to his brother, Ahmed Hassan.

3

hand towards his duty weapon. [SER-21; Dkt. 34-2, Exh. B-3][2] As Hassan started raising the gun, Officer Hall began to say something (it sounded like "step") but did not finish. [SER-21; Dkt. 34-2, Exh. B-2] After Hassan then pointed the muzzle of the gun towards Officer Hall, Officer Hall pulled upward on his duty weapon. [Dkt. 34-2, Exh. B-3; SER - 22] At the time of the first shot, Hassan was holding the gun with the muzzle pointing towards Officer Hall. [Dkt. 34-2, Exhs. B-2 & B-3; SER-22] Officers fired a total of thirteen shots within the span of 2.407 seconds. [SER-25; Dkt. 34-2, Exhs. B-1, B-2 & B-3]

By the time the shooting stopped, Hassan was on the ground. [Dkt. 34-2, Exhs. B-1 & B-3] He was ordered numerous times to roll onto his stomach but did not do so. [Dkt. 34-2, Exh. B-1] The officers then approached him and began providing medical assistance. [Dkt. 34-2, Ex. B-1] It was during this time that Officer Eggiman picked up the gun to move it away from Mr. Hassan and realized it was not a "real" gun. [SER-32; Dkt. 34-2, Exh. B-1]

---

[2] As Hassan pulls the gun and aims it at the officers, it appears he may be saying something but the video does not record any intelligible language or words. [SER-27] In fact, Municipal Defendants retained an audio expert to conduct a forensic audio examination trying to determine whether there was anything said. [Dkt. 12] The expert was unable to find any intelligible speech but there was no need to submit the report to the District Court because plaintiffs did not ever provide any evidence to support the proposition that Hassan said anything.

Hassan's brother, Ahmed, had arrived at the scene shortly before the shooting occurred. [ER-76-78]  After the shooting, Ahmed told officers that Hassan was his brother and that he had seen what happened. [ER-79]  Ahmed was transported to the APD station where he waited for some time before he was interviewed. [ER-58]  While he waited, he was allowed to make phone calls and was offered food and water. [ER-58-59]  After the detectives interviewed him, they told Ahmed that Hassan had died. [ER-30 (citing Dkt. 34-7 at 13)]  Officers then transported Ahmed to his mother's house. [ER-60]

B.    Procedural History.

The Estate of Bishar Hassan, Ahmed Hassan and their mother, Bilay Aden Idiris, filed suit in the U.S. District Court against the Municipality of Anchorage and the three officers who fired their weapons (collectively "Municipal Defendants"). The Complaint (Dkt. 1) asserted eleven claims: two claims against the officers alleging they violated Hassan's Fourth Amendment Rights by detaining him and using excessive force; a claim alleging the officers violated Ahmed and Ms. Idiris' 14th Amendment Substantive Due Process Rights; two claims against the Municipality (APD) – one that it maintained unconstitutional customs and policies and another that it maintained unconstitutional training; three state law claims on behalf of Hassan, alleging false arrest/imprisonment, battery and negligence; and three state law claims on behalf of Ahmed alleging false

5

arrest/false imprisonment, negligent infliction of emotional distress and intentional infliction of emotional distress.

The Municipal Defendants filed for summary judgment on October 5, 2022. [Dkt. 34] Plaintiffs filed their Opposition on November 14, 2022 [Dkt. 37][3] and a Reply was submitted on December 7, 2022. [Dkt. 46] The District Court issued its order on May 9, 2023[4] granting summary judgment to the Municipal Defendants on the federal claims and dismissing all state law claims without prejudice. [ER 55-56]

Plaintiffs do not appeal the court's dismissal of the 14th Amendment Substantive Due Process claim or the dismissal without prejudice of Hassan's state law claims. And they do not argue that the court independently erred in dismissing the *Monell* claims against the Municipality.

## IV. Standard of Review

The court reviews a grant of summary judgment, including on the grounds of qualified immunity and/or under the Fourth Amendment, *de novo*.[5] Summary Judgment should be affirmed if the evidence in the record fails to disclose a

---

[3] The filing on November 14, 2022, purported to be a combined Opposition and Cross-Motion. It was later refiled on November 16, 2022, and treated as a cross-motion. [Dkt. 40]

[4] The court noted it had considered the arguments that plaintiffs raised in their untimely "cross-motion" in ruling on the pending motion. [ER-34]

[5] *Blankenhorn v. City of Orange*, 485 F.3d 463, 470 (9th Cir. 2007) (citations omitted); *US v. Smith*, 633 F.3d 889, 892 (9th Cir. 2011) (quotations omitted).

6

genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[6]

All justifiable inferences of fact are drawn in favor of the non-moving party.[7] But the non-moving party is not relieved of its own burden of producing evidence that could support a jury verdict.[8] "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."[9]

## V.    Summary of Argument

Plaintiffs' appeal focuses substantially on the court's conclusion that Hassan was not seized prior to the shooting. Their argument reflects a misunderstanding of the court's analysis. The court correctly began its analysis by determining whether Hassan was seized at any time before he was shot (i.e. when officers first attempted to contact him). And the court correctly found that Hassan failed to submit to the show of authority when he failed to follow commands and threatened the officers by pulling the gun.

---

[6] *Blankenhorn*, 485 F.3d at 470; *see also Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2014).
[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S. Ct. 1598, 1609, 26 L. Ed. 2d 142 (1970)).
[8] *Anderson*, 477 U.S. at 256.
[9] *Id.* at 257.

Plaintiffs are incorrect there were issues of fact that made summary judgment inappropriate. On the contrary, the court relied on the undisputed video evidence of the encounter to determine that the officers did not violate Hassan's Fourth Amendment Rights. Plaintiffs have never provided any evidence demonstrating the existence of a genuine issue of material fact. Plaintiffs' unsupported "position" about Hassan's actions, which is belied by the only evidence in the record, does not create an issue of fact. Nor does plaintiffs' reliance on an after-the-fact statement by Officer Hall made during the investigation of the incident raise any issues of fact in light of the objective analysis applied to 4th Amendment claims. The District Court therefore correctly found that the undisputed facts supported a finding that the officers did not violate Hassan's rights and granted summary judgment.

The remaining arguments on appeal likewise do not warrant reversal of the court's decision. Plaintiffs purport to appeal a finding concerning Ahmed's Fourth Amendment claims. However, Ahmed never made a 4th Amendment claim. He made only state law claims and the court did not grant summary judgment on those; it dismissed them without prejudice. Further, plaintiffs' argument reflects a misunderstanding of the qualified immunity analysis. Specifically, the court did not need to make any finding about whether the law was clearly established before

granting qualified immunity to the officers since it found there had been no

constitutional violation.  Plaintiffs raise no further issues suitable for appeal.

## VI.    Argument

### A.    The District Court Correctly Concluded Hassan Was Not Seized.

The bulk of plaintiffs' brief is devoted to the question of whether officers

had reasonable suspicion to stop Hassan.  Plaintiffs also devoted substantial efforts

in their opposition and cross-motion before the District Court arguing that the

officers lacked reasonable suspicion sufficient to justify a *Terry* stop.  Plaintiffs'

brief on appeal demonstrates they misunderstand the court's ruling.

Plaintiffs suggest that the court's analysis began at the point Hassan was

shot. (Appellants Br. at 23)  That is not correct.  It is true that the court explained

that Hassan was seized when he was shot. [ER-43]  But the court considered

plaintiffs' claim that the officers lacked reasonable suspicion to conduct the stop in

the first place.  And with respect to that claim, the court correctly started its

analysis with a determination of whether there had been a seizure prior to the

shooting.[10]  It did so because if there is no seizure, no reasonable suspicion is

required.

---

[10] In order to assess the legality of a *Terry* stop, the court "must first pinpoint the moment of the seizure and then determine 'whether that seizure was justified by [reasonable suspicion].'"  *U.S. v. Lowe*, 791 F.3d 424, 430 (3rd Cir. 2015).

Whether a seizure occurred is a mixed question of fact and law reviewed *de novo* by this court.[11] A seizure occurs when an officer - by physical force or show of authority - terminates or restrains freedom of movement.[12] There must be application of force, however slight. If no physical force is used, there is no seizure without actual submission to a show of authority.[13]

It is undisputed that no physical force was used at any time before Hassan was shot. As shown in the video, the officers never made any physical contact with him until he was shot. [Dkt. 34-2, Exh. B-2] Accordingly, the only issue on appeal is whether the court correctly found that Hassan had not submitted to the officers' show of authority.[14]

      1.    The District Court Correctly Concluded that <u>Hassan Did Not Submit to a Show of Authority.</u>

"Whether an individual has 'submitted' to a show of authority depends on both the nature of the show of authority as well as the suspect's conduct at the moment the officer asserted his or her authority."[15] On the facts in this case, Hassan did not submit to a show of authority.

---

[11] *U.S. v. Smith*, 633 F.3d 889, 892 (9th Cir. 2011) (quotations omitted).

[12] *Brendlin* v. California*, 551 U.S. 249, 254, 127 S. Ct. 2400, 2405, 168 L. Ed. 2d 132 (2007) (internal citations omitted).

[13] *California v. Hodari D.*, 499 U.S. 621, 626, 111 S. Ct. 1547, 1551, 113 L. Ed. 2d 690 (1991).

[14] The court's analysis assumed the officer's actions constituted a show of authority and for purposes of this briefing, we do so as well.

[15] *Lowe*, 791 F.3d at 430-31.

When the officers pulled up behind Hassan, he turned around and started walking towards the officers' vehicles. [Dkt. 34-2, Exhs. B-1-B-3]  But walking towards the officers does not mean that he submitted to their authority.  Indeed, in *U.S. v. Smith*,[16] the suspect turned and stepped towards the officer when the officer activated his siren.[17]  He also asked the officer if he was under arrest.[18] Nevertheless, the court found he was not seized at that time because he did not yield to the officer's commands to stand in front of the car and ultimately fled.[19]

Plaintiffs cite numerous cases in support of their argument.  But careful review of the facts of each of those cases shows they are distinguishable so that they do not support plaintiffs' position.  For instance, plaintiffs claim that because Hassan did not flee from the officers, that shows he submitted.  (Appellants Br. at 27) (citing *U.S. v. Lowe*[20]).  But there is no requirement that a subject flee in order to find they did not submit.  In fact, in *Lowe,* the court explained that "flight is not required if a suspect takes action to evade or threaten a police officer."[21]  There, the court held only that when a stationary subject reacts to a show of authority by not

---

[16] 633 F.3d 889.
[17] *Id.* at 891.
[18] *Id.*
[19] *Id.* at 892.
[20] 791 F.3d 424.
[21] *Id.* at 433.

11

fleeing, and makes no threatening movements or gestures while remaining stationary, he has not submitted.[22]

Likewise, plaintiffs overlooked critical differences in *Campbell v. Cheatham Cty. Sheriff's Dep't.*[23] (Appellants Br. at 24) (arguing staying rather than leaving means there has been a seizure). In *Campbell*, the court did explain that the suspect failed to follow commands. But the court found there had been a seizure based on the officers firing shots and his remaining in the home.[24] Thus, his subsequent actions, including disobeying commands, did not affect the analysis since he had already been seized.[25]

The cases demonstrate is that a suspect has not submitted if he fails to follow officer directions or "[he]otherwise takes action to evade or threaten a police officer."[26] For example, in *US v. McClendon*, even though the subject had acknowledged police officers and answered some of their questions, because he failed to follow directions the court found he did not submit to authority.[27] Likewise, the court in *US v. Freeman*[28] found that a suspect who refused to stop

---

[22] *Id.* at 434.
[23] 47 F.4th 468, 478 (6th Cir. 2022).
[24] *Id.* at 477.
[25] *Id.* at 478.
[26] *Lowe,* 791 F.3d at 433.
[27] 713 F.3d 1211, 1216-17 (9th Cir. 2013).
[28] 735 F.3d 92, 95-97 (2nd Cir. 2013).

when approached had not submitted. And in *U.S. v. Johnson*,[29] the court found that a subject had not submitted when he made suspicious movements consistent with reaching for weapon. These cases more closely approximate the facts here.

Hassan failed to follow the officers' directions and threatened the officers. After he turned around and moved towards officers, Officer Hall firmly and loudly told Hassan: "Hey, stop right there man, stop right there". [Dkt. 34-2, Exh. B-2; SER-20] But Hassan ignored the command and continued walking. [Dkt. 34-2, Exhs. B-2, B-3; SER-21-22] He then reached towards his waistband and grabs his gun, and started raising the muzzle in the direction of the officer. [Dkt. 34-2, Exhs. B-1- B-3]. That distinguishes the present case from *U.S. v. Beauchamp,*[30] which plaintiffs also rely on, because there the court found that the subject had been seized when he complied with the commands of the officers.[31] At no time did Hassan comply with officer commands.

<div align="center">2. <u>The Officers Had Reasonable Suspicion to Stop Hassan</u>.</div>

Even if Hassan were seized, Hassan's 4th Amendment claim with respect to the stop fails because the officers had "particularized and objective basis for suspecting [Hassan] of… criminal activity."[32] It is undisputed there were

---

[29] 212 F.3d 1313, 1316-17 (D.C. Cir. 2000).

[30] 659 F.3d 560 (6th Cir. 2011).

[31] *Id.* at 567-68.

[32] *Navarette v. California*, 572 U.S. 393, 396-397 (2014).

numerous calls about a man with a gun. [SER-37] These callers, who identified

themselves, clearly described what the man was doing – brandishing it, waving it,

pointing it - and what he was wearing. [SER-37] There is no dispute that Hassan

was the very man that was the subject of those calls. There is also no dispute that

under municipal law it is a misdemeanor to "flourish" any firearm.[33] Given these

facts, the officers had reasonable suspicion.[34]

> B. Relying on the Undisputed Videos, the District
> Court Correctly Granted Summary Judgment.

Plaintiffs claim the District Court erred by accepting "defendants' version of

fact." (Appellants Br. at 31) But the District Court's decision was not based on a

single party's version of facts. Rather, it was based on undisputed video evidence.

> 1. It was Permissible for the Court to Look at the
> Forensic Video Analysis to Help Interpret the Video;
> Doing So Did Not Create a Material Issue of Fact.

Plaintiffs incorrectly argue that the District Court applied a version of facts

that was favorable to the Defendants because its conclusions were drawn from

---

[33] Anchorage Municipal Code 8.25.030A.1.

[34] *U.S. v. Vandergroen*, 964 F.3d 876, 880-881 (9th Cir. 2020) (finding reasonable suspicion where 911 callers were bar worker and patrons who provided their names and reported personal observations).

It is not clear why plaintiffs are so persistent in this argument. To the extent that plaintiffs hoped to rely on any violation that resulted from the initial stop to argue that there was excessive force, the U.S. Supreme Court is clear that a claim based on excessive force must be considered separately from any other 4th Amendment violation. *County of Los Angeles v. Mendez*, 581 U.S. 420, 429, 137 S. Ct. 1539, 1547, 198 L. Ed. 2d 52 (2017).

looking at the forensic video analysis. (Appellants Br. at 30) But the court was explicit that it took the facts "in the light depicted by the videotapes." [ER-37] It did look at the forensic video analysis only as an aide to understanding the sequence of events depicted in the video given the, for instance to determine the sequence of events in a brief recorded event.[35] [ER 25-26] Doing so did not create an issue of fact.

Reading between the lines, plaintiffs' issue is simply that the analysis does not look exactly the same as the video because it is a series of still images.[36] But plaintiffs do not dispute that the frames contained in the analysis came from the video itself. *See* [Dkt. 34-2, Exh. C-1] More important, plaintiff has not identified any facts upon which the court relied in granting summary judgment that are at odds with the video.

Plaintiffs have not identified any dispute of fact. Accordingly, their reliance on *Zion v. County of Orange*[37] does not support their argument. In *Zion*, the Ninth Circuit concluded that there was a dispute of fact about whether the officer's

---

[35] Municipal Defendants are unaware of any authority that prohibits the court looking at the forensic analysis as an aide to understanding the video and plaintiffs do not cite to any.

[36] Plaintiffs further argue that the court's use of these still images violates the "best evidence rule." (Appellants Br. at 32) This argument is nonsensical given that the court was provided with - and relied upon – the videos. [Dkt. 34-2, Exh. B-1, B-2, B-3]

[37] 874 F.3d 1072 (9th Cir. 2017).

15

actions – head stomping the subject and later firing shots at close range – were reasonable.[38] But such dispute of fact arose because the officer testified that the subject was trying to get up even though the video did not show such action.[39]

Here, the video shows that shortly after officers arrived, Hassan pulled out a gun and pointed the muzzle in the direction of the officers. [Dkt. 34-2, Exh. B-1, B-3] There is no testimony that conflicts with what can be seen in the video. And no evidence apart from that video has been brought forward to show what happened. Accordingly, there are no issues to be resolved by a jury.

2. Plaintiffs' "Position" Does Not Create
An Issue of Fact in the Absence of
Admissible Evidence to Support the "Position."

Plaintiffs further attempt to challenge the District Court's decision, claiming that there is a dispute of fact because "plaintiffs are of the position that Bishar Hassan informed the police officers that what he had was not a real gun." (Appellants Br. at 30 & 35) This position was never mentioned in the briefing to the District Court. Moreover, plaintiffs do not cite to any evidence that supports this "position."[40]

---

[38] *Id.*

[39] *Id.* at 1076.

[40] In earlier public statements and the Complaint [Dkt. 1], plaintiffs made a similar suggestion, also without any support. Accordingly, Municipal Defendants obtained the audio analysis discussed in footnote 2, *supra*.

A "position" is not sufficient to create a dispute of fact because it is not admissible evidence under Civil Rule 56. Thus, the case cited by plaintiffs, *Sandoval v. Las Vegas Metro. Police Dep't*,[41] does not support their contention. In that case, the court found there was a dispute of fact because there was conflicting <u>evidence</u> – specifically, testimony of the officers and the plaintiffs that differed.[42] Here, however, the only evidence of how the events unfolded is the videos. [Dkt. 34-2, Exhs. B-1, B-2 and B-3] And those videos contain nothing showing Hassan "informed the officers" of anything. Counsel cannot simply propose ideas or speculative theories; plaintiffs must set forth specific facts that would be admissible.

> 3.   Officer Hall's After-the-Fact Statements
>        <u>to Investigators Do Not Create an Issue of Fact.</u>

Finally, plaintiffs claim there is a jury issue in light of statements that Officer Hall made to investigators that they claim show he lacked reasonable suspicion. (Br. at 25) (citing [ER 85-87]) To begin, this argument assumes that the court set out to determine whether there was reasonable suspicion to stop Hassan. But the court did not since it concluded there was no seizure and therefore it did not progress to that issue. Further, plaintiffs' description of and conclusions they draw from the statement is questionable.

---

[41] 756 F.3d 1154 (9th Cir. 2014).
[42] *Id.* at 1166.

Even putting all that aside, these post-event interview statements could not create an issue of fact because they are not material. The court analyzes claims of constitutional violations objectively, looking at the facts and circumstances known to officers, without the benefit of hindsight.[43] Officer Hall's after-the-fact subjective statements about what he was thinking at the time are not relevant to the determination of whether his actions were objectively reasonable under the 4th Amendment.

C. Ahmed Did Not Make a 4th Amendment Claim and the Court Did Not Make Any Findings on Such Claim.

Plaintiffs argue that the District Court erred in finding that police did not violate Ahmed's 4th Amendment rights. (Appellants Br. at 28-29) However, the District Court made no such finding. Thus, there is nothing for this court to consider with respect to this argument.

In fact, Ahmed never brought a 4th Amendment claim. The only claims that Ahmed made were state law claims for false arrest/imprisonment, NIED and IIED. [Dkt. 1 at 32-27 (paras. 136-155)][44] And the District Court did not reach any

---

[43] *Bryan v. MacPherson*, 630 F.3d 805, 831 (9th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989) (court evaluates from the "perspective of the reasonable officer, not with 20/20 hindsight"); *U.S. v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L. Ed. 2d 740 (2002) (whether there is reasonable suspicion is an objective inquiry based on the "totality of the circumstances").

[44] He also asserted a substantive due process claim under the 14th Amendment. However, he did not oppose summary judgment on that claim and, the court

conclusion on the merits of those state law claims. Instead, the District Court

properly dismissed those claims without prejudice after dismissing all the federal

claims. [ER-53, 56][45]

> D. The Remaining Arguments on Appeal
>
> 1. Qualified Immunity Was Proper
>    Upon Finding no Constitutional Violation.

Plaintiffs argue that the District Court improperly granted qualified

immunity. (Appellants Br. at 33-35) The doctrine of qualified immunity protects

officers from liability for civil damages "insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person

would have known."[46] Officers may be entitled to qualified immunity even if a

constitutional violation occurs if the right was not clearly established.[47] But the

court may decide which of the two prongs – (1) whether there has been a

---

concluded he did not have a cognizable interest. [ER-45-46] He did not appeal that decision.

[45] *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041 (9th Cir. 1994) ("In the usual case in which federal law claims are eliminated before trial, the balance of factors… point toward declining to exercise jurisdiction over remaining state law claims.") (citations omitted); *see also Frigard v. United States,* 862 F.2d 201, 204 (9th Cir. 1988).

[46] *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).

[47] *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (explaining if plaintiff has satisfied the first step of showing that the facts as alleged make out a violation of a constitutional right, then the court must decide whether the right at issue was 'clearly established' at the time of the alleged misconduct).

deprivation of a constitutional right or (2) whether the right was clearly established at the time – to consider first.[48]

Plaintiffs argue, quoting *Morales v. Fry*,[49] that whether or not there has been a constitutional violation is always a jury question. (Appellants Br. at 33-34) But *Morales* does not stand for that proposition. It is correct that if there is a genuine issue of material facts, summary judgment may not be appropriate. But in *Morales* the court found that the existence of a constitutional violation was a question for the jury because there were issues of fact due to conflicting testimony as to the actions and words of the plaintiff.[50] In this case, as described in the Statement of the Case, *supra* Section III, and as discussed at length above, *supra* Section VIB, there are no issues of fact.

Hassan also argues that qualified immunity is inappropriate because the law was clearly established that it violated Hassan's rights. (Appellants Br. at 35-36) But the argument is at odds with the court's conclusion regarding the existence of a constitutional violation. Once the court found that there was no constitutional violation, it did not need to proceed to the second prong of the analysis.

---

[48] *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 565 (2009).
[49] 873 F.3d 817, 824 (9th Cir. 2017) (quotations omitted).
[50] *Id.* at 823.

2.      Plaintiff Has Not Raised any Reviewable Issue
        <u>With Regard to Dismissal of the Monell Claim.</u>

The finding of a constitutional violation is a required element of a *Monell*

claim.[51]  Appellants do not dispute this is the law.  Thus, there is no issue to be

considered on appeal with respect to *Monell*.  This portion of the brief was,

therefore, unnecessary.

## VII.   Conclusion

For the foregoing reasons plaintiff's appeal should be dismissed and the

District Court's decision should be affirmed.

---

[51] *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (unconstitutional custom or policy); *Blankenhorn*, 485 F.3d at 484 (failure to train).

21

DATED at Anchorage, Alaska, this 13th day of November, 2023.

GUESS & RUDD, P.C.
Attorneys for Appellees


By:   s/Pamela D. Weiss
     Pamela D. Weiss
     AK Bar No. 0305022

CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I further certify that this filing complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(C) because it contains 4866 words, excluding the parts of the filing exempted under Fed. R. App. P. 32(f), according to the count of Microsoft Word.

<div align="right">
s/Pamela D. Weiss<br>
Pamela D. Weiss
</div>

23

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, Appellees certify that they know of no related case pending in this Court.


By: __s/ Pamela D. Weiss_____

24